FILED - GR
January 30, 2009 3:28 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ald_____/_____

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Randy Bradford** and **Karen Bradford**, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Hon. ) ) |
| **Weber & Olcese, P.L.C.**, a Michigan professional limited liability company, | ) ) ) |
| Defendant. | ) ) ) |

1:09-cv-75
Paul L Maloney
Chief U.S. District Judge

**Complaint**

**I.   Introduction**

1.   This is an action for damages, declaratory and injunctive relief, brought by a consumer against the defendant debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.*, and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*, and for conversion.

**II.   Jurisdiction**

2.   This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

**III.   Parties**

3.   Plaintiff Randy Bradford is a natural person residing in Kent County, Michigan. Mr. Bradford is the husband of plaintiff Karen Bradford. Mr. Bradford is a "person" as the term

1

is defined and/or used in the FDCPA, MCPA and MOC.

4. Plaintiff Karen Bradford is a natural person residing in Kent County, Michigan. Mrs. Bradford is the wife of plaintiff Randy Bradford. Mrs. Bradford is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Mrs. Bradford is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MCPA and MOC.

5. Defendant Weber & Olcese, P.L.C. ("Weber") is a Michigan professional limited liability company, doing business at 3250 West Big Beaver Road, Suite 124, Troy, Michigan 48084. Weber's registered agent is Michael J. Olcese, 3250 West Big Beaver Road, Suite 124, Troy, Michigan 48084. According to its website (www.weberolcese.com), "we provide clients with a single solution to retail and commercial debt collection." Weber claims to be a member of the American Alliance of Credit Attorneys, Inc. Weber is a "debt collector" as the term is defined and used in the FDCPA. Weber is a "regulated person" as the term is defined and used in the MCPA. Alternatively, Weber is a "collection agency" as the term is defined and used in the MOC.

**IV.   Facts**

6. Several years ago, Mrs. Bradford used her account with Chase Bank USA, N.A. ("Chase Bank") to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA, MCPA and MOC. The account was in the name of Mrs. Bradford alone.

7. Mr. Bradford had no legal obligation to pay any debt related to his wife's Chase Bank account.

8. In or about 2002, Mrs. Bradford was injured and became totally disabled and

unable to work..

9. Mrs. Bradford applied for disability benefits, but initially the request was denied.

10. Mrs. Bradford became unable to pay her debt to Chase.

11. In or about late 2006, Mrs. Bradford finally was awarded disability benefits and she began the process of repaying her creditors.

12. Mrs. Bradford was represented by an attorney in her negotiations with her various creditors.

13. Apparently, Chase Bank hired Weber & Olcese, P.L.C. to collect the debt from Mrs. Bradford.

14. Mrs. Bradford's attorney began negotiations with Weber in efforts to settle the debt. However, on or about January 23, 2008, and before the debt was settled, Mrs. Bradford's attorney committed suicide.

15. On or about January 23, 2008, Weber, on behalf of Chase Bank, filed a lawsuit against Mrs. Bradford in 62-B District Court for the State of Michigan, Case No. 08-5118-GC. The Complaint demanded $20,840.26. Attached to the Complaint was an unsigned "Attorney Affidavit of Account" which contained a signature line for a Weber attorney named Michael J. Olcese, in his capacity as "attorney for Plaintiff, CHASE BANK USA, N.A.." Essentially, the unsigned Attorney Affidavit of Account alleged nothing more than that Mrs. Bradford was indebted to Chase Bank in the amount of $20,840.26. The unsigned Attorney Affidavit of Account falsely represented to the court that the Weber attorney "makes this Affidavit from the books and/or records of account of Plaintiff in his/her possession, control and custody." Amazing, neither the Complaint nor unsigned Attorney Affidavit of Account contained any

3

account number whatsoever for the alleged debt. Moreover, the Complaint falsely recited that a copy of the contract between Mrs. Bradford and the original creditor was attached. While there was a "Cardmember Agreement" attached to the Complaint, the agreement contained a copyright date of 2006, which was prior to the date of any contract between Chase Bank and Mrs. Bradford. A copy of the Complaint and its exhibits are attached hereto as Exhibit A.

16. The lawsuit filed by Weber requested judgment based on an "Account Stated" theory, presumably pursuant to MCL 600.2145. In an effort to satisfy the requirements of MCL 600.2145, Weber attached to the complaint the unsigned Attorney Affidavit of Account. However, the affidavit was not signed by the original creditor or anyone else with personal knowledge of the original creditor's business records, including the loan agreement and other documents regarding the debt. Rather, the unsigned affidavit was to have been made by a Weber attorney, who routinely and fraudulently signs affidavits for Chase Bank and other creditors in order to create the illusion that the Weber client has stated a claim sufficient to obtain a default judgment against the defendant consumer.

17. Weber and its attorneys regularly and routinely file lawsuits on behalf of its clients to collect alleged credit card debts, requesting judgment based on an "account stated" pursuant to MCL 600.2145, based upon affidavits fail to comply with MCL 600.2145 and which falsely state or imply that the affiant has reviewed the original creditor's business records. Weber routinely files these affidavits even though Weber knows that the affiant attorney has no personal knowledge of the facts to which the affiant has attested.

18. The unsigned affidavit which Weber attached to the complaint purports to have been notarized on December 17, 2007, which was more than ten days before the Complaint was

filed, and therefore could not be considered by the trial court as primae facie evidence of indebtedness. MCL 600.2145. *Capital One Bank v. Ringelberg,* 2005 WL 2319125 (Mich App, Sept. 22, 2005).

19. Weber and its attorneys regularly and routinely file lawsuits on behalf of putative creditors requesting judgment based on an "account stated" pursuant to MCL 600.2145, based upon affidavits that are signed more than ten days before the complaint is filed, and therefore cannot be considered by the trial court as primae facie evidence of indebtedness. MCL 600.2145.

20. Michigan law defines "account stated" to mean a balance struck between the parties on a settlement, and where a party is able to show the mutual dealings which have occurred between two parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance. *Watkins v. Ford,* 69 Mich 357 (1888). In any event, an account stated claim "has no application where the claim is the subject of a special contract." *Thomasma v. Carpenter,* 175 Mich 428,435 (1913).

21. Mrs. Bradford's debt to Chase Bank was the subject of an express written contract. In fact, Weber attached a 'Cardmember Agreement' to the Complaint which it (falsely) claimed was the contract between Chase Bank and Mrs. Bradford. Accordingly, the debt could not have been the subject of an "account stated."

22. Weber and its attorneys regularly and routinely file lawsuits to collect credit card debts that are the subject of an express written contract, while falsely alleging an "account stated" pursuant to MCL 600.2145, when Weber knows or should know that under Michigan law, an account stated claim has no application to credit card debt that is the subject of an express written contract.

23.     Weber wrongfully filed the Complaint in the wrong court. Weber filed the Complaint in 62-B District Court in Kentwood, Michigan, even though Weber knew or should have known that Mrs. Bradford resided within the jurisdiction of 62-A District Court in Wyoming, Michigan.

24.     On March 3, 2008, Weber had Mrs. Bradford served with Summons and Complaint at her home in Wyoming, Michigan.

25.     After being served with Summons and Complaint, the Bradfords telephoned Weber in efforts to settle the debt.

26.     On or about March 31, 2008, Mr. Bradford spoke by telephone with a Weber collector/employee named Naomi Jones. Ms. Jones stated that she was recording the telephone call. Mr. Bradford stated that Mrs. Bradford wanted to avoid having a judgment entered against her. Ms. Jones stated that Chase Bank would agree to settle the debt for a total payment of $16,000.00, with an initial payment of $13,000.00 to be transferred that day by Western Union to a Weber bank account, and with the remaining $3,000.00 to be paid in three installments of $1,000.00 each, due in the months of May, June and July of 2008. Ms. Jones represented that if Mrs. Bradford accepted the offer and made the agreed payments, then Mrs. Bradford could avoid having a judgment entered against her. Mrs. Bradford accepted the offer.

27.     On March 31, 2008, Mrs. Bradford caused $13,000.00 to be transferred by Western Union to a Weber bank account. That was all of the money remaining from Mrs. Bradford's disability settlement. Receipts for payment of the $13,000.00 are attached hereto as Exhibit B.

28      Weber mailed Mrs. Bradford payment coupons to be included with her three

remaining monthly installment payments of $1,000.00 each.

29.     Despite the foregoing, Weber reneged on its settlement agreement with Mrs. Bradford and surreptitiously proceeded in its efforts to obtain a default judgment against Mrs. Bradford for the full amount of the alleged debt.

30.     On April 14, 2008, Mr. Olcese signed a Request and Affidavit in Case No. 08-5118-GC, asking the court to enter a Default and Default Judgment against Mrs. Bradford. The affidavit signed by Mr. Olcese falsely stated to the court: "The claim is not based on a note or other written evidence of indebtedness." Apparently, Mr. Olcese made the false affidavit in order to avoid Michigan law requiring that the note or other written evidence of indebtedness be provided to the court clerk for cancellation. A copy of the Default Request, Affidavit, and Entry are attached hereto as Exhibit C.

31.     On April 24, 2008, the court clerk entered judgment by default on behalf of Chase Bank and against Ms. Bradford in the amount of $21,018.46. A copy of the Judgment is attached hereto as Exhibit D.

32.     In May 2008, Mrs. Bradford made a timely payment of $1,000.00 to Weber.

33.     In June 2008, Mrs. Bradford made a timely payment of $1,000.00 to Weber.

34.     Despite the foregoing, on or about June 24, 2008, Weber filed with 62-B District Court, a Notice of Judgment Lien, giving notice that Weber was recording a judgment lien with the Kent County Register of Deeds, in order to encumber and place a lien against Mrs. Bradford's current and future interest in real property.

35.     The Judgment Lien recorded by Weber wrongfully encumbered Mrs. Bradford's interest in her home, causing her damage and acute embarrassment.

36.    In July 2008, Mrs. Bradford made a timely payment of $1,000.00 to Weber.

37.    With Mrs. Bradford's time payment to Weber of $1,000.00 in July 2008, Mrs. Bradford fully satisfied the terms of her settlement agreement with Chase and no longer owed anything to Chase or anyone else in connection with the account.

38.    Despite the foregoing, on August 30, 2008, Mr. Olcese signed a Request for Writ of Garnishment (Periodic) in Case No. 08-5118-GC, falsely stating that the judgment against Mrs. Bradford remained unsatisfied and that $6,394.09 remained due. Mr. Olcese named Hascall Steel Co. as the Garnishee.

39.    Mrs. Bradford has never been employed by Hascall Steel Company. Rather, Mr. Bradford was employed by Hascall Steel Company.

40.    On September 23, 2008, the clerk of the court for 62-B District Court issued a Writ of Garnishment. A copy of the Request and Writ for Garnishment (Periodic) is attached hereto as Exhibit E.

41.    On October 7, 2008, the Writ of Garnishment was received by Hascall Steel Company. Management at Hascall Steel Company summoned Mr. Bradford to the company's administrative office and presented him with a copy of the Writ of Garnishment, causing Mr. Bradford and Mrs. Bradford to suffer extreme stress and embarrassment, such that Mr. Bradford sought medical aid due to extreme high blood pressure and was required to take time off from work.

42.    In October 2008, Mrs. Bradford spoke by telephone with a Weber collector/employee identified as Michelle. Mrs. Bradford complained that Weber had sent a garnishment to her husband's employer, that the judgment was not against her husband, and that

the debt had been settled and paid. The Weber employee reviewed Weber's computer file, agreed that the debt had been settled and paid, and stated that Weber would investigate the matter and call Mrs. Bradford back.

43. On October 16, 2008, Hascall Steel Company filed a Garnishee Disclosure in 62-B District Court, stating that Mrs. Bradford was not employee of the company. A copy of the Garnishee Disclosure is attached hereto as Exhibit F.

44. On or about October 16, 2008, an attorney from Weber spoke by telephone with Mrs. Bradford. The Weber attorney stated that the error had been corrected, that a release would be sent out, and that Mrs. Bradford had nothing more to worry about.

45. Despite the foregoing, on October 16, 2008, Mr. Olcese signed a Request for Writ of Garnishment (Income Tax Refund/Credit) in Case No. 08-5118-GC, falsely stating that the judgment against Mrs. Bradford remained unsatisfied and that $6,516.84 remained due. Mr. Olcese named the Michigan Department of Treasury as the Garnishee.

46. On November 4, 2008, the clerk of the court for 62-B District Court issued a Writ of Garnishment, instructing the Michigan Department of Treasury to intercept Mrs. Bradford's income tax refund and pay it to Weber. A copy of the Request and Writ for Garnishment (Income Tax Refund/Credit) is attached hereto as Exhibit G.

47. Mrs. Bradford was unaware that Weber had caused the court to issue a Writ of Garnishment to intercept her income tax refund.

48. On January 29, 2009, Mrs. Bradford learned that Weber had intercepted her 2008 income tax refund that was due from the Michigan Department of Treasury.

49. At all times relevant hereto, the Bradfords had the absolute and exclusive right to

the possession of their Michigan income tax refund.

50. Weber converted the Bradfords' Michigan income tax refund to its own use.

51. Weber received and possessed the Bradfords' Michigan income tax refund.

52. Weber received and possessed the Bradfords' Michigan income tax refund, knowing that the funds had been converted.

53. Weber wrongfully caused a default judgment to be entered against Mrs. Bradford.

54. Weber has failed to have the default judgment set aside.

55. Weber has failed to file a satisfaction of judgment.

56. Weber has failed to release the judgment lien it placed against Mrs. Bradford's real property.

57. Weber has slandered Mrs. Bradford's title to her property.

58. Weber has wrongfully caused a judgment to appear on Mrs. Bradford's credit history as reported by all three consumer reporting agencies, Experian, Equifax and TransUnion, harming Mrs. Bradford's credit.

59. The unlawful debt collection methods, acts and practices of Weber and its employees were willful.

60. The violations of the MCPA and MOC by Weber and its employees were willful.

61. As an actual and proximate result of defendant's acts and omissions, plaintiffs h ave suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, and suffering for which they should be compensated in an amount to be established by jury and at trial.

V. **Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

62. Plaintiff incorporates the foregoing paragraphs by reference.

63. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

   c) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt.

**Wherefore,** plaintiffs seek judgment against defendant for:

   a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

   b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

   d) A declaration that defendant'' practices violate the FDCPA; and

   e) Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act
### (M.C.L. § 445.251 *et seq.*)

64. Plaintiffs incorporate the foregoing paragraphs by reference.

65. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

   a) Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

   b) Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the garnishment of the debtor's property;

   c) Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

   d) Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiffs seek judgment against defendant for:

   a) Actual damages pursuant to M.C.L. § 445.257(2);

   b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

   c) Statutory damages pursuant to M.C.L. § 445.257(2); and

   d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

### Count 3 – Michigan Occupational Code
### (M.C.L. § 339.901 *et seq.*)

66. Plaintiffs incorporate the foregoing paragraphs by reference.

67. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)   Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)   Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the garnishment of the debtor's property;

c)   Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

d)   Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiffs seek judgment against defendant for:

a)   Actual damages pursuant to M.C.L. § 339.916(2);

b)   Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)   Statutory damages pursuant to M.C.L. § 339.916(2); and

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 4 — Common Law Conversion and Statutory Treble Damages

68.   Plaintiffs incorporate the foregoing paragraphs by reference.

69.   At all times relevant hereto, plaintiffs had the exclusive right to the immediate possession of their Michigan income tax refund.

70.   Defendant converted plaintiffs' funds to its own use.

71.   Defendant received and continued to possess plaintiffs' fundes, knowing that the funds had been converted.

72. Plaintiffs have suffered loss as a result of defendant's conversion of their funds.

**Wherefore,** plaintiffs seek judgment against defendant for:

a) A declaratory judgment that defendants' practices constituted conversion;

b) Actual damages for common law conversion, equal to the fair market value of the funds at the time of conversion;

c) Treble damages pursuant to M.C.L. § 600.2919a, calculated as three times the fair market value of the funds at the time of conversion;

d) Costs pursuant to M.C.L. § 600.2919a;

e) Reasonable attorney's fees pursuant to M.C.L. § 600.2919a; and

f) Such further relief as the Court deems appropriate

**Demand for Trial by Jury**

Plaintiffs demand trial by jury.

Dated: January 30, 2009

_____
Phillip C. Rogers (P34356)
Attorney for Plaintiffs
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com